**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **MARK R. LYNN, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 03-2662-KHV** |
| **GENERAL ELECTRIC COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| ________________________________________ | ) | |

**MEMORANDUM AND ORDER**

Plaintiffs bring suit against General Electric Company, alleging that it violated the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq*. This matter comes before the Court on Defendant's Motion To Dismiss And Petition To Compel Arbitration (Doc. #94) filed July 25, 2005, as to plaintiff John F. Campesino. For reasons set forth below, the Court sustains defendant's motion.

**Factual Background**

On June 30, 1999, Bill Casey, defendant's General Manager – Human Resources, Environmental, Health and Safety Operation, issued a notice which contained the following provision:

> BY ACCEPTING AN OFFER OF EMPLOYMENT WITH GETS [General Electric Transportation Systems] OR BY TRANSFERRING TO GETS ON OR AFTER THE EFFECTIVE DATE OF THIS PROCEDURE (6/30/99), ALL COVERED EMPLOYEES WHOSE DATE OF HIRE . . . WAS ON OR AFTER THE EFFECTIVE DATE OF THIS PROCEDURE, AGREE AS A CONDITION OF EMPLOYMENT TO WAIVE THE RIGHT TO PURSUE COVERED CLAIMS IN COURT AND TO ACCEPT AN ARBITRATOR'S AWARD AS THE FINAL, BINDING, AND EXCLUSIVE DETERMINATION OF ALL COVERED CLAIMS.

Exh. C to Exh. 1 to Defendant's Memorandum (Doc. #96-2). Casey's notice identified the dispute resolution procedure as "a written agreement for the resolution of employment disputes, pursuant to the Federal Arbitration Act, 9 U.S.C.A. Sections 1-14." Id. ¶ L. On the same day Casey issued the notice, defendant promulgated the GETS RESOLVED Dispute Resolution Procedure Guidelines (the "Guidelines"). The Guidelines define "covered claims" as "[c]laims relating to compensation, leaves of absence, and notice of mass layoffs and/or plant closings." Id. The Guidelines set forth a four-level dispute resolution process. Levels I and II occur within the company. If an employee is not satisfied with the results, he or she must submit the claim to Level III mediation. If the parties cannot reach a settlement at Level III, the employee may take his or her claim to Level IV arbitration.[1] Defendant posted the Guidelines on the company's intranet website.

More than two years after Casey's notice, on September 10, 2001, defendant employed Campesino as a lead Technical Director for GETS.[2] On September 4, 2001, Richard Gottschalk, plaintiff's future supervisor, handed Campesino a stack of documents. The stack included a document entitled "GETS Acknowledgment Conditions of Employment," which in paragraph 1 stated as follows:

> I acknowledge that the offer of employment made to me is contingent upon meeting all employment requirements, including but not limited to the following:
>
> . . . .
>
> e. my review and agreement to [the Guidelines] for GETS Employees. My signature below constitutes acknowledgment of my receipt and review of a copy of and agreement to the Guidelines.

Exh. A to Exh. 1 to Defendant's Memorandum In Support Of Motion To Dismiss And Petition To Compel

---

1 The Guidelines explain the Level IV arbitration process in approximately 10 pages.

2 Defendant's records indicate that it employed plaintiff through June 24, 2005.

Arbitration ("Defendant's Memorandum") (Doc. #96-2) filed July 25, 2005. The instructions on the form stated that "[c]opies of the referred attachments can be obtained on line," and provided the website address and login information. Id. Directly above the signature line the document stated "I accept the conditions of employment described above." Id. Campesino signed the document on September 4, 2001. Plaintiff did not receive a hard copy of the Guidelines or the 1999 notice, but his signature acknowledged his receipt, review and agreement to the documents on defendant's website.

On October 20, 2001, Campesino signed the cover page of the "GETS Handbook for Dispute Resolution" (the "Handbook").[3] Defendant never discussed the Guidelines or the Handbook with Campesino, and prior to his termination, it never told him that employment disputes might require arbitration. Although plaintiff does not deny receiving the Handbook, he does not recall seeing it and defendant does not claim that it gave him a copy of the Handbook. The Handbook summarizes the four-level GETS RESOLVED dispute resolution program, and it expressly states that the Guidelines prevail over the Handbook if any differences exist between the two.

Defendant routinely required plaintiff to work 50 to 70 hours a week, and did not compensate him at the overtime rate for hours in excess of 40.

In March of 2005, Erin Lewis, Project Manager, informed Campesino that defendant intended to terminate his employment. At her suggestion, Campesino contacted Kim Steiner, Human Resources Manager, in defendant's home office. Steiner told Campesino that she would send him a Separation Agreement and Release of All Claims (" separation agreement"), and that he needed to "sign it and return

---

[3] The cover page does not contain any agreement. It merely contains the company's name, logo and Handbook title.

it within 21 days or we will discontinue your pay." Declaration of John F. Campesino, Exh. B to Motion For Reconsideration Of The Court's Order (Doc. #134-3) filed October 11, 2005.

Steiner's letter, which accompanied the agreement, stated that "[i]n return for the special allowances and benefits set forth in this Agreement, [GE Transportation Rail] requires that you waive all claims that you may have against GETR." Declaration of John F. Campesino, Exh. B to Motion For Reconsideration Of The Court's Order (Doc. #134-3). It also stated that "[t]his waiver is set forth in Paragraph 6 of the Agreement ('Employee's Release')." Id. The waiver read as follows:

> By entering into this Agreement, Employee understands that he accepts the payments and benefits provided by the Company in full and complete satisfaction of, and hereby knowingly and voluntarily agrees to release and waive, any and all claims, demands, causes of action, obligations, damages, or liabilities against the Company, and/or its affiliates, . . . .

Exh. E to Exh. 1 to Defendant's Memorandum (Doc. #96-7) ¶ 6a. Defendant does not claim that Campesino waived his claim for overtime compensation by executing this separation agreement. Defendant's Memorandum (Doc. #96-1) at 4. It claims that Campesino's overtime compensation claim is subject to binding arbitration under subsection (e) of Paragraph 6 of the separation agreement.[4] That paragraph provided as follows:

> (e) The Employee agrees to submit to final and binding arbitration under the attached GETS Resolved Procedure Handbook (GETS Resolved)[5] any claims not released by this release . . . .

---

[4] Plaintiff does not deny that the arbitration agreement covers his claim for overtime compensation, if the arbitration agreement is enforceable.

[5] It is not clear whether the separation agreement refers to the GETS RESOLVED Handbook For Dispute Resolution, the GETS RESOLVED Procedure Guidelines For GETS Employees or a third document not included in the record. As noted earlier, the Guidelines set forth a detailed description of the four-level dispute resolution program. The Handbook summarizes the program.

Id. The separation agreement also stated that Campesino had 21 days to review the agreement and that he could revoke the agreement within seven days after he signed it. Campesino accepted four weeks of severance pay, and he did not exercise his right to revoke the separation agreement.

On June 10, 2005, Campesino initialed each page of the separation agreement. He placed an "x" by the following statement: "I have read each and every paragraph of this Agreement, I have been advised to consult with my attorney, I understand my respective rights and obligations, and I choose to sign this Agreement before the expiration of the 21 day review period." Exh. E to Exh. 1 to Defendant's Memorandum (Doc. #96-7). When Campesino signed the agreement and release, he did not realize that he might have a claim for unpaid overtime under the Fair Labor Standards Act.

**Analysis**

Defendant asks the Court to compel arbitration and dismiss this action. Plaintiff, through his declaration, opposes the motion. Plaintiff asserts that he never received copies of various documents; that when he signed the separation agreement, he was not advised about the arbitration provisions; and that he did not realize that he had a potential claim under the Fair Labor Standards Act.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., ensures that written arbitration agreements in maritime transactions and transactions involving interstate commerce are "valid, irrevocable, and enforceable." 9 U.S.C. § 2. Federal policy favors arbitration agreements and requires that the Court rigorously enforce them. Shearson/Am. Exp., Inc. v. McMahon, 482 U.S. 220, 226 (1987) (citing Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985)); see Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 122-23 (2001) (arbitration agreements in employment contracts generally enforceable). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. Moses H.

Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

FAA Section 3 states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

The question of arbitrability – whether the parties agreed to arbitrate a particular dispute – is an issue for judicial determination. AT& T Techs., Inc. v. Commc'n Workers of Am., 475 U.S. 643, 649 (1986). Before granting a stay or dismissing a case pending arbitration, the Court must determine that the parties have a written agreement to arbitrate. See 9 U.S.C. §§ 3 and 4; Avedon Eng'g, Inc. v. Seatex, 126 F.3d 1279, 1283 (10th Cir. 1997). If the parties dispute making an arbitration agreement, a jury trial on the existence of an agreement is warranted if the record reveals genuine issues of material fact regarding the parties' agreement. See id. When deciding whether the parties have agreed to arbitrate, the Court applies ordinary state law principles that govern the formation of contracts. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).

Defendant argues that the parties had two separate enforceable agreements to arbitrate – the acknowledgment form which Campesino signed on September 4, 2001 and the separation agreement which he signed on June 10, 2005. Because the Court finds that the separation agreement requires binding arbitration, the Court need not address defendant's argument with respect to the acknowledgment form. In the separation agreement, Campesino agreed to submit to "final and binding arbitration under the

attached GETS Resolved Procedure Handbook . . . any claims not released by th[e] release." Exh. E to Exh. 1 to Defendant's Memorandum (Doc. #96-7). Campesino does not deny that his overtime compensation claim falls within the scope of this agreement to arbitrate, but he argues that the agreement is not enforceable because the arbitration agreement did not attach the Handbook.

Before evaluating whether the parties agreed to arbitrate, the Court must determine what state law controls the formation of the contracts in this case. See Avedon, 126 F.3d at 1284. Here, the separation agreement expressly states that "[t]his Agreement shall be interpreted in accordance with the laws of the State of Pennsylvania." Exh. E to Exh. 1 to Defendant's Memorandum (Doc. #96-7) ¶ 18. Pennsylvania law on the enforceability of agreements to arbitrate is in accord with federal law and requires enforcement of arbitration provisions as written. Lytle v. CitiFinancial Servs., Inc., 810 A.2d 643 (Pa. Super. 2002). Such provisions may be set aside only for defenses such as duress, illegality, fraud and unconscionability. Id. Under federal substantive law, failure to attach a document which contains an arbitration provision does not necessarily render an agreement invalid when the agreement incorporates an arbitration provision by reference. See Prof'l Sports Tickets & Tours, Inc. v. Bridgeview Bank Group, No. CIV.A. 01-991, 2001 WL 1090148, at *4 (E.D. Pa. Sept. 13, 2001); see also Ludwig v. The Equitable Life Assurance Soc'y of the U.S., 978 F.Supp. 1379 (D. Kan. 1997) (plaintiff on notice of mandatory arbitration even though she did not receive copy of code containing full arbitration agreement).

In Quiles v. Financial Exchange Co., 879 A.2d 281 (Pa. Super. 2005), the Superior Court of Pennsylvania refused to enforce an arbitration agreement when plaintiff did not receive a copy of the arbitration agreement. In Quiles, plaintiff signed an acknowledgment form when she began her employment. The form stated that plaintiff had read the employee handbook, but she never received a

copy of the handbook and the form did not indicate that the handbook contained an arbitration provision. The court held that the arbitration provision in the handbook was not binding because defendant never communicated it to the employee. Quiles, 879 A.2d at 286. The court also noted that "there was no arbitration clause in the acknowledgment form signed by Quiles and nothing in the form indicated that she would be waiving her right to a judicial forum." Id. The court ultimately concluded as follows:

> Quiles could not validly agree to arbitrate her claims without first having been given a copy of the Handbook, the only document that detailed and explained [Dispute Resolution Program] DRP and the company's proposed arbitration process. In essence, the terms of the process were never fully communicated to her. Without being given information explaining the company's policy to exclusively arbitrate any workplace disputes, Quiles could not accept the terms of the agreement to arbitrate.

Id. at 288.

The acknowledgment form in Quiles differs in important respects from the separation agreement in this case. See 879 A.2d at 283-84. In Quiles, the form which plaintiff signed contained no reference to an arbitration agreement, did not indicate that she was giving up her right to a judicial forum and did not include language which clarified substantive provisions such as whether arbitration constituted the exclusive means of resolution. Id. at 284. Furthermore, Quiles – who did not have command of the English language – signed the acknowledgment form under pressure, without representation by counsel and with no opportunity to consult counsel. Id. Quiles specifically asked for a copy of the referenced handbook but never received it. Id.

In Acher v. Fujitsu Network Comm'ns., Inc., 354 F. Supp.2d 26 (D. Mass. 2005), the court similarly concluded that a plaintiff who did not receive a copy of the arbitration policy had not agreed to arbitrate even though defendant made the policy available to employees through an internal website. The

court found that defendant had produced no evidence that the employee knew about the website or attended any meetings where defendant explained the policy. This Court has held that an employee may be required to arbitrate when she has received notice of mandatory arbitration and has had the opportunity to read the arbitration clause and inquire about ambiguities, even though she has not received a copy of the arbitration code. See Ludwig, 978 F.Supp. at 1382; see also Stocker v. Syntel, Inc., No. 03-2606, 2004 WL 1851410, at *2 (D. Kan. Aug. 16, 2004) (plaintiff did not receive arbitration rules but did not ask for them).

Here, the separation agreement clearly stated that Campesino agreed to submit to final and binding arbitration. He read the provision. He realized that the Handbook was not attached, but he made no attempt to obtain a copy of the purported agreement. The arbitration guidelines were posted on defendant's website, and plaintiff acknowledged that he had received, reviewed and agreed to them. Campesino had 21 days to review the agreement and consult with counsel before signing it. Even after signing, he could revoke within seven days. On these facts, the Court concludes that Campesino had more than ample opportunity to review and understand the implications of the arbitration clause within the separation agreement.

Campesino contends that because he did not know about his potential overtime wage claim, he did not agree to arbitrate that claim. This argument is unpersuasive. Campesino's alleged lack of awareness of potential claims does not vitiate his agreement to arbitrate.

Because the Court finds that the parties had an enforceable agreement to arbitrate based on the separation agreement, it need not reach whether the acknowledgment form constituted an enforceable agreement.

**IT IS THEREFORE ORDERED** that Defendant's Motion To Dismiss And Petition To Compel Arbitration (Doc. #94) filed July 25, 2005 be and hereby is **SUSTAINED** in part. Campesino's claims against defendant are subject to arbitration and are hereby stayed pending arbitration.

**IT IS FURTHER ORDERED** that the parties file status reports with the Court every 90 days, until the agreed arbitration procedures are completed.

Dated this 9th day of January, 2006 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge